| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:16-CR-86 (4) |
| § | |
| WESELEY MCGIRT § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Wesley McGirt's ("McGirt") Emergency Motion for Reduction in Sentence Based on COVID-19 Conditions at FCI Oakdale and Exhaustion of Administrative Remedies (#303), wherein McGirt requests that the court reduce his sentence to time served due to the threat of Coronavirus Disease 2019 ("COVID-19"). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny McGirt's motion. The Government filed a response in opposition (#306). Having considered the motion, Probation's recommendation, the Government's response, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.   Background

On July 20, 2017, pursuant to a binding plea agreement, McGirt pleaded guilty to Count Nine, Possession of a Firearm While an Unlawful User of a Controlled Substance in violation of 18 U.S.C. § 922(g)(3), of the First Superseding Indictment. On November 21, 2017, the court sentenced him to 120 months' imprisonment, followed by a 3-year term of supervised release. McGirt is currently housed at the Federal Correctional Institution in Oakdale, Louisiana ("FCI Oakdale"), and his projected release date is March 2, 2025.

II.    Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United*

*States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 833-34; *Raia*, 954 F.3d at 597.

Here, on April 6, 2020, McGirt's counsel submitted a request for compassionate release to the warden where he is housed. McGirt contends he has not received a response from the warden. The Government, however, maintains that prison records show the request was denied on April 19, 2020. Although McGirt may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In the instant motion, McGirt, age 27, contends that he has a compromised immune system due to the removal of his thyroid gland that makes him more vulnerable to complications from COVID-19. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

McGirt initially asserted that he had his thyroid surgically removed last year based on concerns regarding a cancerous tumor and that he takes daily medication to partially replace enzymes that a healthy thyroid ordinarily secretes. After the Government pointed out that the medical records reflected that he had a thyroidectomy due to hyperthyroidism and a benign, multinodular goiter, McGirt conceded that he did not have cancer but contends that he remains "somewhat immune compromised" based on a letter dated June 3, 2020, from Michelle Haggar, M.D., an endocrinologist. McGirt's medical records confirm that he had a thyroidectomy on November 26, 2018, which resolved his hyperthyroidism. He is prescribed a daily levothyroxine tablet to keep his thyroid-stimulating hormone ("TSH") within normal ranges. The medical records also document repeated instances in which McGirt has been noncompliant with taking the levothyroxine regularly. McGirt further contends that because he cannot isolate and/or maintain six-foot distancing from other inmates, he cannot provide self-care. McGirt misconstrues the meaning of self-care, which pertains to the basic activities of daily living such as dressing, bathing, and eating. *See* 42 U.S.C. § 1397j(14)(B). Probation observes that in his PSR, prepared in 2017, McGirt reported that he was in good health, had no medications prescribed, and had no serious medical conditions. Moreover, the Government notes that the BOP classifies McGirt as Care Level 1, which indicates that the inmate is less than 70 years old, is generally healthy, and

"may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." FEDERAL BUREAU OF PRISONS CLINICAL PRACTICE GUIDELINES, CARE LEVEL CLASSIFICATION (2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf. The records reveal that the only other medical concerns McGirt has voiced while incarcerated consist of complaints of shoulder pain, inability to sleep, fever blisters, a toothache, and a sore throat/cold, all of which were resolved by treatment and/or medication. Hence, it appears that McGirt's medical condition can be properly managed with medication and routine medical care. Furthermore, the Government notes that on May 13, 2020, McGirt was tested for COVD-19 as part of a surveillance screening at FCI Oakdale, and he tested negative. Thus, McGirt's medical summary does not meet the criteria listed in the guidelines. McGirt's medical condition is not terminal, nor does it substantially diminish his ability to provide self-care.

McGirt's request for compassionate release—based on his medical condition and risk of suffering complications from COVID-19—potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director

in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to McGirt for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to McGirt's situation. As of July 15, 2020, the BOP reports 6 active, 7 deaths, and 205 recovered cases of COVID-19 among a total of 896 inmates and 6 active, 0 deaths, and 18 recovered cases of COVID-19 among staff at FCI Oakdale. Although McGirt expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020)));

*United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Thus, McGirt has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). The nature and circumstances of McGirt's offense of conviction entail his possession of firearms while an unlawful user of a controlled substance. Officers executed a search warrant at McGirt's residence, which resulted in the seizure of various narcotics including oxycodone hydrochloride, alprazolam, promethazine with codeine, and marijuana, as well as 3 loaded handguns. During the execution of the search warrant, McGirt admitted to officers that he was addicted to prescription pain pills. Moreover, McGirt distributed 1.5 grams of oxycodone hydrochloride to an undercover officer in April 2016 and 2.97 grams of oxycodone hydrochloride and 354.33 grams of promethazine with codeine to an undercover officer in May 2016 while having a firearm in his pocket. McGirt has a prior conviction for disorderly conduct and an extensive history of daily poly-substance abuse. He was also identified as a member of a street gang. According to his PSR, McGirt reported to Probation that, although he had received some treatment in the past, he felt that he needed additional substance abuse treatment and would like to participate in any program to help him improve his

life. At sentencing, however, McGirt objected to Probation's recommendation of substance abuse treatment while incarcerated and while on supervised release. Under the circumstances, the court cannot conclude that McGirt would not pose a danger to the safety of any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 6,979 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, McGirt's track record is similarly a poor one.

In short, McGirt has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has

"carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.  Conclusion

Consistent with the foregoing analysis, McGirt's Emergency Motion for Reduction in Sentence Based on COVID-19 Conditions at FCI Oakdale and Exhaustion of Administrative Remedies (#303) is DENIED.

SIGNED at Beaumont, Texas, this 17th day of July, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE